1

2

3

4

5

6

7

8

The Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

TRACY HARDYAL, FRANK LOPA,

                        Plaintiffs,

     vs.

U.S. BANK NATIONAL ASSOCIATION,
as Successor Trustee to Bank of America,
N.A. as Successor to LaSalle Bank, N.A. as
Trustee for Certificate Holders of Washington
Mutual Mortgage Pass-Through Certificates
WMALT Series 2007-3 Trust; unknown DOE
defendants 1 through 50 claiming an interest
in subject property,

                       Defendants.

Case No.:  2:17-01416 TSZ

PLAINTIFFS' SUPPLEMENTAL BRIEF
REGARDING POSSIBLE
REVOCATION OF ACCELERATION

NOTED ON MOTION CALENDAR:
July 6, 2018

19

20

21

22

23

24

25

26

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1    This brief responds to the Court's request June 27, 2018 Minute Order requesting

2    supplemental briefing on whether the 2008 acceleration by GreenTree Mortgage Funding,

3    Inc. ("GreenTree"), U.S. Bank's predecessor, of the Plaintiffs' loan obligation was later

4    abandoned or waived.[1] Under the circumstances of this case, the Court should conclude that

5    the acceleration was never abandoned, waived, or revoked, and that summary judgment

6    should be entered in Plaintiffs' favor, quieting title in their real property located at 129-21st

7    Avenue in Seattle against any right, title or interest in the property claimed by U.S. Bank.

8

9    A.    **The 2008 Acceleration was Never Abandoned, Waived, or Revoked.**

10   Although legal authority is scant, Washington courts have recognized that a creditor's

11   acceleration of a borrower's installment obligation can be abandoned or waived. In *Equitable*

12   *Life Leasing Corp. v. Cedarbrook Inc.,* 52 Wn. App. 497, 761 P.2d 77 (1988), an equipment

13   lessee fell behind on its monthly payments. The lessor notified the lessee by letter that the

14   lease payments were accelerated. Thereafter, the lessor sent monthly billings to the lessee

15   and accepted monthly lease and late charge payments. For several months, the lessee

16   continued to be in default of its obligations. The lessor notified the lessee by telephone that

17   unless the October and November payments were received by November 28, 1983, it would

18   repossess the equipment. The lessee's payments for October and November were received on

19   about December 1, 1983, leaving due on the account only $91 in late charges. Within days of

20

21   the lessee delivering these payments to the lessor, the lessor repossessed the equipment. The

22

23

24   _____

[1] When discussing acceleration of an installment debt, the terms "abandonment," "waiver" "deceleration" and "revocation" all refer to the situation where a lender has accelerated the debt but subsequently chooses to return to the situation where the entire balance is not due and periodic payments are due on the original loan terms. *Ayala v. Carrington Mortgage Services, LLC,* No. CV-16-02156-PHX-ROS, 2017 WL 6884299, at *2 (D. Ariz. Oct. 30, 2017); *see also* Restatement (3d) of Property (Mortgages) § 8.1 (1997) cmt. e ("[A] court may relieve a mortgagor from the consequences of acceleration and permit reinstatement of the mortgage by payment of arrearages where it determines that the mortgagee waived its right to accelerate.").

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING
POSSIBLE REVOCATION OF ACCELERATION - 1
(Case No. 2:17-01416 TSZ)

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

lessor sued the lessee for a deficiency judgment, and the lessee counterclaimed for wrongful repossession. On the lessee's motion for summary judgment, the trial court ruled that the lessor had abandoned its acceleration by continuing to send monthly billing statements and accepting monthly payments after the acceleration. The court entered an order holding that the repossession was wrongful.

On appeal, the lessor argued that there was an issue of fact about whether it had abandoned its prior acceleration. The court rejected this argument:

> [I]n [lessor's] answer to interrogatories, Equitable stated that only $91 in late fees was owed on the date of repossession. This admitted fact eliminates any need to consider whether the rental payments had been accelerated or the attempted acceleration waived. The undisputed facts … support the conclusion that Equitable waived the acceleration by issuing monthly billings and accepting monthly payments and late charges after the notice of acceleration and by making a subsequent statement to [lessee] Cedarbrook that it would not repossess the equipment if the October and November payments were made by November 28, 1983. A lessor cannot notify its lessee that the lease payments are accelerated and then issue monthly billings and accept monthly payments and late charges. These acts are inconsistent with acceleration.

*Id.* at 501-02. The Court of Appeals affirmed the trial court's ruling that the lessor had waived its prior acceleration.

*Equitable Life Leasing Corp.* has not been cited in any published or reported cases for its holding regarding the lessor's abandonment of its acceleration, and only two other published or reported Washington cases discuss whether a creditor may abandon a prior acceleration of an installment debt. In *Washington Fed. v. Azure Chelan LLC,* 195 Wn. App. 644, 382 P.3d 20 (2016), Washington Federal, the successor to a junior lienholder, brought a quiet title action against Azure Chelan LLC ("Azure"), a senior Deed of Trust holder, after Washington Federal foreclosed on its deed of trust and acquired title to the property.



1   Washington Federal argued that more than six years had passed since Azure had accelerated

2   the debt secured by its deed of trust, that it was barred by RCW 4.16.040's six-year statute of

3   limitations from enforcing its Note, and that Washington Federal was entitled to an order

4   quieting title in the property as to Azure's claim of interest. The trial court agreed and

5   quieted Washington Federal's interest in the property against Azure's claim. *Id.* at 651, 664.

6
7          On appeal, Azure argued that if it had accelerated the installment debt secured by the

8   property, it had abandoned the acceleration, negating the six-year limitations period. Azure

9   argued that "chose to accept the actions, assurances and other commitments of [original

10  borrower] LHDD1 rather than initiate foreclosure", and "in each event [of default] Azure

11  elected to accept verbal assurances from LHDD1 as supporting a cure or excuse of those

12  events of default." *Id.* at 664. The Court of Appeals rejected Azure's argument, stating that

13  these statements did not say "what the 'action, assurances, and other commitments' actually

14  were, and that they were therefore "merely a summary or conclusion of fact … not sufficient

15
16  to withstand summary judgment." *Id.* (Citation omitted). The trial court's summary judgment

17  order was affirmed.

18         In *Kirsch v. Cranberry Financial, LLC,* 178 Wn. App. 1031, 2013 WL 6835195 (Dec.

19  23, 2013) (unpublished), a creditor filed a complaint in 2004 to collect on a promissory note

20  and personal guaranty. The complaint contained an express notice of the creditor's intent to

21  accelerate the balance of the note. After five years of inactivity in the case, in 2009 the court

22
23  clerk dismissed the case.

24         In 2012, the note guarantor filed an action against Cranberry Financial, LLC, the prior

25  plaintiff's successor, seeking to quiet title to the property he had pledged to secure the

26  original debt, on the ground that the six-year statute of limitations barred enforcement of the



Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1   note and guaranty. The trial court granted the collection agency's motion for summary

2   judgment, ruling that the clerk's dismissal of the first lawsuit effected an abandonment of the

3   acceleration. 2013 WL 6835195 at *2-4. On appeal, the Court of Appeals reversed the trial

4   court, ruling that the dismissal of the first lawsuit had no effect on the creditor's acceleration

5   of the debt. The court ruled that the six-year statute of limitations had run, and the collection

6   agency was barred from collecting any part of the remaining note balance. *Id.* at *7.

7

8       While none of these Washington cases provide firm guidelines for when a creditor

9   should be deemed to have abandoned a prior acceleration of an installment debt, courts in

10  other jurisdictions have provided guidance that should direct this Court.

11      In *Steinberger v. IndyMac Mortg. Servs.,* No. CV-15-00450-PHX-ROS, 2017 604003

12  (D. Ariz. Jan. 12, 2017), a borrower sought a declaratory judgment that the creditor was

13  barred by Arizona's statute of limitations from obtaining judgment on an installment debt

14  that had been previously accelerated and from foreclosing on the real property securing the

15  debt. After the creditor's acceleration of the debt, the creditor forwarded a letter to the

16  borrower, informing her that the loan was "in serious default"; that the borrower had the right

17  to cure the default by paying the past-due amounts; and that if she did not cure the default,

18  the creditor "may accelerate [the] mortgage," with the result that the full amount owed on the

19  note would be "due and payable.' *Id.* at *13. The court determined that this letter constituted

20  a revocation of the prior acceleration and granted the creditor's motion for summary

21  judgment, holding that the creditor was not barred from obtaining judgment on the debt or

22  from foreclosing on the property. *Id.* The court enunciated what a creditor must do to revoke

23  or abandon an acceleration of an installment debt:

24

25

26      [R]evocation of acceleration may occur when a lender commits an



affirmative act to revoke acceleration. As for the type of affirmative act necessary, Arizona law does provide acceleration of a debt requires an affirmative act that "make[s] clear to the debtor it has accelerated the obligations." (Citation omitted). Sensibly, that same requirement should apply to revocation of acceleration. That is, revocation of acceleration occurs when a lender takes an affirmative act that places the borrower on actual or constructive notice of the revocation.

*Id.* at \*12.

The *Steinberger* court relied extensively for its ruling on *Wood v. Fitz-Simmons,* No. 2 CA-CV 2008-0041, 2009 WL 580784 (Ariz. Ct. App. Mar. 6, 2009) (unpublished). In *Wood,* a creditor had filed a lawsuit to collect on a promissory note obligation and accelerated the entire debt due in the complaint. Following the commencement of the suit, the creditor accepted partial payments on the debt, and the lawsuit was dismissed by the court clerk for want of prosecution. When the creditor filed a second lawsuit, the borrower argued that more than six years had passed since the acceleration in the first lawsuit and therefore, the creditor was barred from recovering. The creditor argued that it had abandoned the acceleration by accepting partial payments and allowing the first lawsuit to be dismissed. The court ruled that abandonment of a prior acceleration requires an "affirmative act" by the creditor, and acceptance of partial payments and dismissal of the first lawsuit were not such affirmative acts. *Id.* at 3. The court held that the debt was extinguished by the statute of limitations. *Id.; accord, Lavin v. Elmakiss,* 302 A.D.2d 638, 639, 754 N.Y.S.2d 741 (2003) (mortgagee's "mere acceptance" of mortgage payments following notice of acceleration "is not inconsistent with [its] insistence that the entire debt immediately be paid … [and] does not … constitute proof of an affirmative act of revocation" of acceleration).

In *Cadle Co. II v. Fountain,* No. 49488, 281 P.3d 1158 (Table), 2009 WL 1470032 (Nev. Feb. 4, 2009), the Nevada Supreme Court affirmed the trial court's summary judgment



1   order barring a creditor from collecting on a promissory note and foreclosing on the real

2   property pledged as security for the debt, holding that the creditor's action was barred by the

3   statute of limitations. The creditor argued that the voluntary dismissal of its prior action to

4   recover on the debt – which would not have been barred by the statute of limitations – was a

5   valid abandonment of its acceleration of the debt. The Nevada Supreme Court disagreed,

6
7   holding that a creditor must clearly communicate to the borrower the intent to revoke a prior

8   acceleration, which the creditor had not done:

9       Because an affirmative act is necessary to accelerate a mortgage, the
        same is needed to decelerate. Accordingly, a deceleration, when
10      appropriate, must be clearly communicated by the lender/holder of the
        note to the obligor. Here, if [creditor] CIT intended to revoke the
11      acceleration of the debt due under the note, it should have done so in a
        writing documenting the changed status. The voluntary dismissal did
12      not decelerate the mortgage because it was not accompanied by a clear
        and unequivocal act memorializing that deceleration.
13

14  *Id.* at *1.

15      Finally, New York cases discuss what is required for a lender to revoke a prior

16  acceleration of an installment debt. In *Citimortgage, Inc. v. Ramirez,* 59 Misc.3d 1212(A),

17  2018 WL 1749899 (Table) (N.Y. Sup. Ct. 2018), the court discussed a five-prong test for

18  determining whether a creditor has abandoned the acceleration of an installment debt:
19

20      (1) the revocation must be evidenced by an affirmative act; (2) the
        affirmative act must be clear and unequivocal; (3) the affirmative act
21      must give actual notice to the borrower that the acceleration has been
        revoked; (4) the affirmative act must occur before the expiration of the
22      six-year statute of limitations period; and (5) the borrower must not
        have changed his or her position in reliance on the acceleration.[2]
23

24  _____
    [2] *Accord, EMC Mortg. Corp. v. Patella,* 279 A.D.2d 604, 605-06, 720 N.Y.S.2d 161 (2001) (dismissal of prior
25  foreclosure action by court did not constitute affirmative act by lender revoking its election to accelerate); *U.S.
    Bank N.A. v. Crockett,* 55 Misc.3d 1222(A); 61 N.Y.S.3d 193 (N.Y. Sup. Ct. 2017) ("After the mortgage debt
26  has been accelerated, the acceleration may only 'be revoked through an affirmative act occurring within the
    limitations period.' (Citation omitted). … The revocation should be clear, unequivocal, and give actual notice to

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING
POSSIBLE REVOCATION OF ACCELERATION - 6
(Case No. 2:17-01416 TSZ)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

Applying these principles to this case, in order for GreenTree or U.S. Bank to have revoked or abandoned the February 2008 acceleration, either of them was required to affirmatively, clearly and unequivocally provide notice to the Plaintiffs that the acceleration was abandoned and/or revoked. In addition to having failed to argue in its opposition to Plaintiffs' motion for summary judgment that the February 2008 acceleration of Plaintiffs' loan obligation was abandoned, waived or revoked, U.S. Bank has failed to submit any evidence in support of the conclusion that it abandoned, waived or revoked the acceleration, or that it provided actual or constructive notice to the Plaintiffs of such abandonment, waiver, or revocation. There is nothing in the record that supports such a conclusion.

With respect to the August 2008 Forbearance Agreement, the mere fact that the Plaintiffs entered into the Agreement does not raise a genuine issue of material fact about whether the acceleration was revoked or abandoned. There is no mention of "acceleration" in the Agreement, and it is silent concerning whether the execution of the Agreement constitutes a revocation or abandonment of the acceleration. The Agreement itself warned that the Plaintiffs' failure to comply with all required payment provisions would result in the termination of the Agreement without notice, and that the foreclosure in progress would resume. Forbearance Agreement, ¶ 7; *see also* ¶9 (creditor's acceptance of payments pursuant to the Agreement was not to be construed as a waiver of any rights creditor had under the then-pending foreclosure proceeding, and "shall not prevent or delay the sale of the mortgaged premises ... in the event of a default"), ¶ 13 (Forbearance Agreement did not discontinue existing foreclosure proceeding, and failure of Plaintiffs to make payments

---

the borrower of the lender's election to revoke in sum, akin to the manner plaintiff gave notice to exercise the option to accelerate. (Citation omitted)").

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

required by Agreement would "result in the foreclosure proceeding being resumed from the appropriate stage"); ¶ 14 (Plaintiffs waived any further notice of default under the mortgage or Forbearance Agreement and authorized creditor to resume foreclosure proceedings to resume in the event of a default without notice to Plaintiffs). Indeed, the Agreement explicitly informed the Plaintiffs that nothing in the Agreement should be construed as *a* waiver or estoppel of "any of GreenPoint's rights under the Note and Mortgage or in connection with the foreclosure action." Thus, rather than abandoning or revoking the prior acceleration of the Plaintiffs' loan obligation, the Forbearance Agreement specifically provides that it shall *not* be deemed to be an abandonment, waiver or revocation of GreenTree's pre-existing rights, including the right to pursue foreclosure based on the prior acceleration of the Plaintiffs' loan, and that GreenTree retained all of those rights until Plaintiffs complied with all provisions of the Agreement, including timely making all payments required by it. Forbearance Agreement, ¶ 4. By the express terms of the Forbearance Agreement, because the Plaintiffs failed to make the payments required by it, the Agreement was immediately terminated and of no effect, GreenTree retained all of the rights it had prior to Plaintiffs' execution of the Agreement (including the rights attendant to having declared an acceleration of the installment debt), and the parties' relationship reverted to the pre-Forbearance Agreement status. In short, the fact that the parties entered into the Forbearance Agreement did not constitute GreenTree's abandonment, waiver, or revocation of its February 2008 acceleration of the Plaintiffs' installment debt. Further, no subsequent conduct by GreenTree or U.S. Bank exhibited any required affirmative act to constitute an abandonment, waiver, or revocation of the debt.

**B.     The Court Can Rule on Summary Judgment Whether the 2008 Acceleration was**

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING
POSSIBLE REVOCATION OF ACCELERATION - 8
(Case No. 2:17-01416 TSZ)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

**Abandoned, Waived, or Revoked.**

The Court also requested briefing on whether it can rule as a matter of law if GreenTree or U.S. Bank abandoned, waived or revoked the February 2008 acceleration. The Court can rule, as a matter of law, that there was no abandonment, waiver, or revocation.

Summary judgment is appropriate where there is an absence of evidence submitted by the non-moving party sufficient to create a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598 (1970). Here, not only has U.S. Bank not argued there was an abandonment, waiver, or revocation of the February 2008 acceleration, it submitted no evidence for its opposition to the motion for summary judgment that raises a genuine issue of material fact that there was such an abandonment, waiver or revocation. Thus, the Court may rule as a matter of law that there was no abandonment, waiver, or revocation.

Several courts have ruled in cases similar to this that, as a matter of law, there was no waiver, abandonment, or revocation of a prior acceleration of an installment debt. In *Equitable Life Leasing Corp.,* the trial court's ruling on summary judgment that the lender had waived the prior acceleration of the debt was affirmed on appeal. 52 Wn. App. at 501-02. In *Azure Chelan LLC*, the trial court's decision on summary judgment that there had been no abandonment was affirmed on appeal. 195 Wn. App. at 664. And *Kirsch* was also resolved on summary judgment; while the trial court ruled as a matter of law that the lender had abandoned acceleration when the first foreclosure lawsuit was dismissed, the Court of Appeals reversed and determined as a matter of law that there had been no abandonment.

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1   2013 WL 6835195, at *6.[3]

2      Therefore, if there is no genuine issue of material fact about whether the lender

3   abandoned, waived or revoked its acceleration of a borrower's installment debt, a court is

4   authorized to determine there was no such abandonment on summary judgment, as a matter

5   of law. Here, there are no genuine issues of material about whether GreenTree or U.S. Bank

6   abandoned, waived or revoked GreenTree's acceleration of the Plaintiffs' installment debt –

7
8   they did not – and accordingly, the Court can rule on summary judgment that there was no

9   such abandonment, waiver, or revocation, as a matter of law.

10  **C.   If the Acceleration was Waived, the Debt Would be Enforceable, Except for
         Installment Payments that Accrued Six Years Before the Commencement of the**
11       **Case.**

12      If the Court concludes that an abandonment, waiver or revocation occurred in this

13  case, the installment debt will not be deemed to have been accelerated for purposes of the

14  six-year statute of limitations on the entire debt. U.S. Bank will not be permitted to recover

15  the monthly installment payments that were due more than six years prior to the time this

16
17  action was filed, accounting for periods when the statute of limitations was tolled. *Herzog v.*

18  *Herzog,* 23 Wn.2d 382, 387-88, 161 P.2d 142 (1945). However, the Court should conclude

19  that there are no genuine issues of material fact concerning whether GreenTree or U.S. Bank

20  abandoned, waived, or revoked the February 2008 acceleration, and that Plaintiffs are

21  entitled to summary judgment in their favor that U.S. Bank is barred from recovering on the

22  Note and to an order quieting title to their real property against U.S. Bank's claim.

23

24

---

[3] *See also Steinberger,* 2017 WL 6040003, at *11-12 (trial court ruled as a matter of law on summary judgment
25  that lender revoked its prior acceleration of debt); *Wood,* 2009 WL 580784, at *4 (trial court's summary
    judgment order that there had been no abandonment of the prior acceleration affirmed on appeal); *Lavin,* 302
26  A.2d at 639 (same); *Cadle Co. II, Inc.,* 2009 WL 1470032, at *1-2 (same); *Ramirez,* 59 Misc.3d 1212(A), at *4-
    6 (trial court held on summary judgment that lender had not abandoned acceleration).

Berry&Beckett
                                        LLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1    DATED THIS 6th day of July, 2018.

2                                      BERRY & BECKETT, PLLP

3                                      */s/ Guy Beckett*
                                       Guy W. Beckett, WSBA #14939
4                                      Attorneys for Plaintiffs Hardyal
                                        and Lopa
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING
POSSIBLE REVOCATION OF ACCELERATION - 11
(Case No. 2:17-01416 TSZ)

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346